**The below described is SIGNED.**

**Dated: September 30, 2013**

_____
R. KIMBALL MOSIER
U.S. Bankruptcy Judge



## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>C.W. Mining Company, dba Co-Op Mining Company,<br><br>Debtor. | Bankruptcy Number: 08-20105<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Rhino Energy LLC and Castle Valley Mining LLC,<br><br>Plaintiff,<br>v.<br><br>C.O.P. Coal Development Company and ANR Company, Inc.,<br><br>Defendants. | Adversary Number: 11-2250 |

### MEMORANDUM DECISION

What does my statement "So long as Buyer mines in substantial compliance with an R2P2 as approved by the BLM and substantially complies with applicable Federal, State and local laws the Buyer is not in default under paragraph 5 of the Mine Operating Agreements" mean? That question is the crux of the issue here. Well, I meant what I said and said no more

than I meant but, since Plaintiffs seek to expand the scope and effect of my statement, I must explain and answer the question.

# I. JURISDICTION

The Court has jurisdiction to interpret and enforce its prior orders.[1] For the reasons set forth herein, the jurisdiction of this Court in this matter is limited to clarifying its prior orders. The Court lacks jurisdiction over the parties' remaining claims and they will be dismissed. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

# II. FACTUAL BACKGROUND

The history of this adversary proceeding, intertwined with those of the main bankruptcy case and its related adversary proceedings present a complex array of facts and events. It is necessary to review some, but fortunately not all, of these events in order to place the statement in proper context and understand the scope and effect of the ruling.

In March 1997 C.W. Mining Company (Debtor) and C.O.P. Coal Development Company entered into a coal operating agreement (C.O.P. Operating Agreement). In March 1999 the Debtor and ANR Company, Inc. entered into a coal operating agreement (ANR Operating Agreement). (The C.O.P. Operating Agreement and ANR Operating Agreement are hereinafter jointly referred to as the "Mine Operating Agreements".) The Mine Operating Agreements gave the Debtor exclusive rights to mine property known as the Bear Canyon Mine. A portion of the Bear Canyon Mine is situated on federal lands, leased by C.O.P. The Debtor took possession of

---

[1] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195 (2009).

the Bear Canyon Mine and mined coal in such a manner that the federal lease was maintained and, it appears, the Bureau of Land Management (BLM) deemed C.O.P. to have satisfied the mining requirements under the Bear Canyon Logical Mining Unit (LMU).

Aquila, Inc. is a judgment creditor of the Debtor, having obtained a $24 million judgment against the Debtor in October 2007, in the United States District Court for the District of Utah. On January 8, 2008, Aquila and other petitioning creditors filed an involuntary chapter 11 bankruptcy petition against the Debtor.

In June of 2008, the Debtor entered into an agreement to sell all of its assets, including equipment and personal property, and transfer its interests the Mine Operating Agreements to Hiawatha (Hiawatha Agreement). The Debtor transferred physical possession of its assets and the Bear Canyon Mine to Hiawatha.

An order for relief on the involuntary petition was entered on September 26, 2008. Shortly thereafter, Aquila filed a motion for appointment of chapter 11 trustee, or alternatively, to convert the case to chapter 7. The case was converted to a case under chapter 7 on November 13, 2008. After a disputed election, the Court ordered that the interim trustee Kenneth A. Rushton (Trustee) serve as the permanent trustee.

The Trustee promptly began litigation with C.O.P., ANR, and Hiawatha, respecting the Hiawatha Agreement and the Mine Operating Agreements. The Hiawatha Agreement was subsequently avoided under 11 U.S.C. § 549[2] pursuant to a complaint filed by the Trustee. To enable the Trustee to cure the Debtor's monetary default under the C.O.P. Agreement as provided by 11 U.S.C. § 365(b)(1)(A), the Court established the amount of unpaid royalties due

---

[2] Statutory references herein are to Title 11 of the United States Code, unless stated otherwise.

to C.O.P. (Cure Amount). The Court also ruled that the Debtor was not in default of the obligation to diligently and continuously operate the Bear Canyon Mine. Paragraph 5 in both the C.O.P. Operating Agreement and the ANR Operating Agreement contains the following clause (Continuous Operations Clause):

> Debtor shall <u>diligently and continuously operate</u> the subject property for the term hereof unless the operation thereof is prevented by strike, car shortages, government regulation, any act of God, or similar cause beyond the control of Operator, or unless all of the merchantable coal in said premises is sooner extracted, mined and removed. Operator shall conduct all operations hereunder in a good and minerlike manner and in a manner which will result in the <u>ultimate maximum economic recovery</u> of coal from the property . . . .
> Operator shall, in the operation and development of the premises, comply with all applicable Federal, State, and local laws that apply to Operator's mining operation and shall conduct its mining operations and take all actions and perform all duties required to maintain the Federal and State mining permits and approvals relating to the Premises. (Emphasis added.)

The Court determined that the interpretation of the phrases "diligently and continuously operate" and "maximum economic recovery" contained in the Mine Operating Agreements should be consistent with the Code of Federal Regulations[3] terms "continued operation" and "maximum economic recovery" and rejected C.O.P.'s and ANR's argument that the Debtor was in default under the Continuous Operations Clause.

After these favorable rulings, the Trustee moved the Court to approve a sale of the mine assets to Rhino under § 363 and authorize the Trustee's assumption and assignment of the Mine Operating Agreements to Rhino under § 365. C.O.P. and ANR resisted the sale and the assumption and assignment of the Mine Operating Agreements, arguing that Rhino could not provide adequate assurance of future performance under § 365.

---

[3] 43 C.F.R. § 3480.0-5(8) and (21).

C.O.P. asserted that the contents of a Resource Recovery and Protection Plan submitted by the Debtor to the BLM in 2006 (2006 R2P2) and subsequently approved by the BLM amount in substance to an amendment of the C.O.P. Mine Operating Agreement or otherwise somehow have become unalterable obligations of the operator under the C.O.P. Mine Operating Agreement. In particular, C.O.P. argued that the 2006 R2P2 requires the "maximum economic recovery" from the entire LMU to be realized within a time limit of 40 years from April 1990. The evidence was that R2P2 plans are routinely amended to adapt to changing conditions encountered during mining, and such amendments are routinely approved by the BLM. In fact, the BLM was requiring an update to the 2006 R2P2 prior to the continuation of mining on the LMU. C.O.P. and ANR also contended that Rhino's decision not to use a longwall mining method renders it impossible for Rhino to mine out the entire reserves within the LMU within the remaining part of the 40-year mine-out period and Rhino therefore could not provide adequate assurance of future performance required under the Mine Operating Agreements. Specifically, C.O.P. and ANR argued that Rhino could not maximize the economic recovery of the LMU.

The Court found that the purpose of the Continuous Operations Clause was not to establish C.O.P.'s and ANR's monetary benefits but ensure compliance with applicable laws and ensure that the mining rights are maintained. Because Rhino is an experienced coal mine operator, the Court concluded that Rhino could give adequate assurance that it would comply with applicable laws. The portions of the Court's Amended Findings and Conclusions entered in August 2010 that are most relevant to the issue before the Court are as follows:

5

35. Although the Mine Operating Agreements use the term "diligently and continuously operate" the term is not defined by the Mine Operating Agreements in terms of annual production of coal or in terms of dollars generated.

36. Although the Mine Operating Agreements use the term "ultimate maximum economic recovery" the term is not defined by the Mine Operating Agreements in terms of annual production of coal or in terms of dollars generated.

37. C.O.P.'s and ANR's monetary benefits are covered by the royalties section of the Mine Operating Agreements. The purpose of paragraph 5 of the Mine Operating Agreements is to ensure that the "Operator… in the operation and development of the premises, comply with all applicable Federal, State and local laws that apply to Operator's mining operation and… conduct its mining operations and take all actions and perform all duties required to maintain the Federal and State mining permits and approvals relating to the Premises."

41. The stipulations imposed by the BLM and accepted by the Trustee in connection with the LMU Decision (Exh. TR 607 and 610) require in part that "Prior to commencement of mining on the Bear Canyon LMU, an update to the [2006] R2P2 shall be required" ("Buyer's R2P2"). Such R2P2 plans are routinely amended to adapt to changing conditions encountered during mining and such amendments are routinely approved by the BLM. Neither COP nor ANR has any veto power or other right of control as to the contents or approval of such plans.

43. The uncontested evidence is that the BLM determines whether an operator is in compliance with the "continued operation" and "maximum economic recovery" requirements contained in the Code of Federal Regulations and that this Court has no jurisdiction over the BLM's decisions on that matter.

44. The BLM and other Federal, State and local agency responsible for enforcing mining regulations have the jurisdiction to interpret their regulations and requirements and compliance with the same. It is inappropriate for this Court to speculate with respect to future actions of these agencies or to enter an order that may be inconsistent with or infringe on the jurisdiction of these agencies.

45. So long as Buyer mines in substantial compliance with an R2P2 as approved by the BLM and substantially complies with applicable Federal, State and local laws the Buyer is not in default under paragraph 5 of the Mine Operating Agreements.

On August 4, 2010, the Court entered a sale order (Sale Order) approving the sale of the Debtor's mining assets to Rhino and authorizing the Trustee's assumption of the Mine Operating Agreements and their assignment to Rhino. As part of the Sale Order, the Court specifically

adopted and incorporated its findings of fact and conclusions of law relating to the Continuous Operations Clause. Rhino then purchased the majority of the Debtor's mining assets for $15 million.

On January 7, 2011, C.O.P. and ANR issued default notices to Rhino and Castle Valley Mining, LLC (Plaintiffs) to terminate the Mine Operating Agreements. Receipt of the default notices prompted Plaintiffs to file the adversary proceeding. C.O.P. and ANR subsequently withdrew their original default notices on the eve of a preliminary injunction hearing. C.O.P. and ANR issued additional default notices on January 26, 2012. In their default notices, C.O.P. and ANR assert that Plaintiffs defaulted under the Mine Operating Agreements by not seeking C.O.P.'s and ANR's approval before obtaining an amended R2P2 from the BLM. C.O.P.'s and ANR's principal objection to the amended R2P2 involves: (1) the time frame for removal of coal from the Bear Canyon mine—the amended R2P2 contemplates removal of coal after the termination of the Mine Operating Agreements and will thereby limit the amount of royalties owed to C.O.P. and ANR during the term of the lease; and (2) the method of coal removal—the amended R2P2 approves the use of the "continuous mining method" in lieu of the "longwall method" preferred by C.O.P. and ANR. The default notices also contain an exhaustive list of alleged violations of federal regulations and state and local law allegedly committed by Plaintiffs in the course of mining the Bear Canyon Mine. Lastly, C.O.P. and ANR allege that Plaintiffs have failed to pay royalties on all coal extracted and removed from the premises of the Bear Canyon Mine.

Plaintiffs filed their Second Amended Complaint on February 24, 2012. In their Second Amended Complaint, Plaintiffs bring the following causes of action: (1) declaratory judgment as

to the royalties owed under the C.O.P. Agreement, (2) declaratory judgment as to the royalties owed under the ANR Agreement, (3) declaratory judgment as to alleged default for amending and mining under the R2P2 plan, (4) declaratory judgment as to notice of default of continuous operations clause and other miscellaneous alleged defaults, (5) issuance of an injunction against C.O.P. and ANR, enjoining them from issuing notice of termination or forfeiture, and (6) declaratory judgment against ANR and C.O.P. as to claims for damages based on R2P2 plans.

On April 9, 2012, C.O.P. and ANR filed their Answer to Plaintiffs' Second Amended Complaint and Counterclaims. Based on the alleged violations contained in their default notices, C.O.P. and ANR assert the following counterclaims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) alternative claim of unjust enrichment, (4) conversion, (5) negligence, (6) trespass, and (7) intentional interference with economic relations.

After a number of pleadings were filed in this adversary proceeding, C.O.P. and ANR filed a motion to withdraw the reference. The motion was denied by the District Court, and so the matter is here for further consideration.

### III. DISCUSSION

Central to this explanation is the context in which this Court's rulings regarding the Mine Operating Agreements have been made. The claims asserted by all parties to this adversary proceeding relate to the Mine Operating Agreements. The Court's statements and rulings that are being contested were made in the context of various hearings where the Court considered the Mine Operating Agreements under 11 U.S.C. § 365. The Court's initial rulings were made in the context of the hearing on the Trustee's request for declaratory judgment interpreting the

8

Continuous Operations Clause. The Court determined that the interpretation of the phrases "diligently and continuously operate" and "maximum economic recovery" contained in the Mine Operating Agreements should be consistent with the Code of Federal Regulations terms "continued operation" and "maximum economic recovery." This ruling was critical to the Trustee's efforts to establish that there was no existing default with respect to the Continuous Operations Clause. The Court also considered the Mine Operating Agreements in connection with the Cure Amount hearing. Most relevant to this adversary proceeding was the Court's consideration of the Mine Operating Agreements in connection with the Sale Motion and the Trustee's motion to assume and assign the Mine Operating Agreements.

C.O.P's. and ANR's principal challenge to the assumption and assignment of the Mine Operating Agreements was Rhino's inability to provide adequate assurance of future performance—most importantly, Rhino's inability to satisfy the "maximum economic recovery" required by the Mine Operating Agreements. The Court expressly rejected this contention, finding that if the BLM concluded Rhino was complying with the "maximum economic recovery" requirements of the Code of Federal Regulations., then Rhino would be in compliance with the "maximum economic recovery" requirements of the Mine Operating Agreements.

**A. What the Court Said.** In summation, this Court's consideration and interpretation of the Mine Operating Agreements were limited to a consideration of the Trustee's ability to assume and assign them under § 365. In this context, what the Court said was: (1) For purposes of § 365(b), there has been a default in payment of royalties, but that default may be cured, (2) For purposes of § 365(b), there are no other defaults under the Mine Operating Agreements, (3) For purposes of §§ 365(b)(1)(c) and 365(f)(2)(b), the Trustee and Rhino have established

9

adequate assurance of future performance, and (4) The Mine Operating Agreements may be assumed and assigned to Rhino.

More specifically, as part of its determination that Rhino could provide adequate assurance of future performance with respect to the Continuous Operations Clause, the Court found that "[s]o long as Buyer mines in substantial compliance with an R2P2 as approved by the BLM and substantially complies with applicable Federal, State and local laws the Buyer is not in default under paragraph 5 of the Mine Operating Agreements." In other words, in the Court's view, the Continuous Operations Clause requires the operator under the Mine Operating Agreements to comply with applicable laws and regulations. The Court found, pursuant to the evidence it heard, that Rhino was able to provide adequate assurance that it would comply with applicable laws and regulations, including the "continued operation" and "maximum economic recovery" required by the BLM. The Court specifically addressed C.O.P.'s and ANR's argument that Rhino's proposed R2P2 did not satisfy the "maximum economic recovery" requirement by concluding that if the BLM determines the "maximum economic recovery" requirement is met by approving an R2P2, Rhino will be in compliance with the Continuous Operations Clause. Therefore, the Court was able to determine there was adequate assurance of future performance of this specific requirement.

**B. What the Court Did Not Say.** In its ruling, this Court did not say that Rhino cannot be in breach of the Mine Operating Agreements so long as Rhino is in substantial compliance with an approved R2P2, or that any R2P2 Rhino obtains does not breach the Mine Operating Agreements. The Court's ruling with respect to an approved R2P2 was limited to paragraph 5 of the Mine Operating Agreements and to the Court's determination that Rhino could provide

adequate assurance that it would comply with applicable federal, state and local laws. Rhino is attempting to expand the scope and effect of this Court's rulings on the Mine Operating Agreements. The Court's rulings with respect to the Mine Operating Agreements were for purposes of the Court's § 365 analysis of whether there was a present ability to provide assurance of future performance, not to adjudicate prospective claims among C.O.P., ANR and Rhino. The Court's ruling did not extend to future acts of the parties or purport to enjoin any party.

Section 365 authorizes assumption and assignment of executory contracts and unexpired leases and establishes the parameters for such assumption and assignment, but it does not authorize bankruptcy courts to issue injunctions in connection with such assumption and assignment. It is understandable that the Trustee, in connection with his motion to assume and assign the Mine Operating Agreements to Rhino, did not ask this Court to enjoin C.O.P. and ANR in any way. Had the Trustee sought such an injunction, it would have been improper for this Court to issue an injunction. The Court had no jurisdiction to issue such an order then, and it has no jurisdiction to issue such an order now.

**C. Other than Clarifying its Prior Rulings, the Court Lacks Jurisdiction Over the Parties' Claims.** Federal courts have a duty to address jurisdiction sua sponte when there is a substantial question regarding the court's jurisdiction.[4]

   1. <u>The Court's Jurisdiction Over the Mine Operating Agreements Terminated When They Were Assigned to Rhino</u>. Until the closing of the sale and the assignment of the Mine Operating Agreements, the Mine Operating Agreements were property of the bankruptcy estate and under the Court's jurisdiction. After the closing of the sale and the assignment of the

---

[4] *Columbian Financial Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1375–76 (10th Cir. 2011).

Mine Operating Agreements, the Mine Operating Agreements were no longer property of the bankruptcy estate and are not under the Court's jurisdiction.[5]

    2. <u>The Court Lacks Jurisdiction Over the Parties' Claims</u>.  The dispute among C.O.P., ANR and Rhino is not a case "under title 11." The dispute among C.O.P., ANR and Rhino is not a "case arising under title 11".[6]  Similarly, it is not a case that "arises in" a case under title 11.[7]  The final question with respect to Bankruptcy jurisdiction is whether the parties' claims are related a case under title 11.  Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or a state court and could conceivably have any effect on the estate being administered in bankruptcy.[8] Other than those claims seeking clarification of this Court's prior rulings, the parties' claims relate to an agreement that is not property of the estate, whose claims against each other do not give rise to claims against the estate and do not affect the administration of the estate.  The parties' claims are not related to a case under title 11, and there is no bankruptcy jurisdiction under 28 U.S.C. § 1334.

---

[5] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990).

[6] *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010) ("A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code.").

[7] *Id.* ("A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.").

[8] *Gardner*, 913 F.2d at 1518 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

3. <u>The Court Did Not Retain Jurisdiction to Adjudicate the Parties' Claims</u>.  This Court has jurisdiction to enforce its orders[9] and in this case specifically retained jurisdiction to:

a. Interpret, implement and enforce the terms of this Order and the Sale Agreement, all amendments thereto and any waivers or consents thereunder and each of the agreements executed in connection therewith in all respects;

b. Decide any disputes concerning this Order, the Sale Agreement or the rights and duties of the parties hereunder or thereunder or any issues relating to the Sale Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Mine Assets and all issues and disputes arising in connection with the relief authorized herein;

c. Protect the Buyer or any of the Mine Operating Agreements or Mine Assets against any of the Encumbrances as provided herein including, without limitation, to enjoin the commencement or continuation of any action seeking to impose successor liability or bulk sale liability;

d. Enter orders in aid or furtherance of: (i) the transfer of possession and control from the Trustee to the Buyer; and (ii) the transactions contemplated by the Sale Agreement or to ensure the peaceful use and enjoyment of the Mine Operating Agreements or the Mine Assets by the Buyer;

e. Compel delivery of all Mine Assets to the Buyer;

f. Adjudicate any and all remaining issues, if any, concerning the Trustee's right and authority to assume and assign the Mine Operating Agreements and the rights and obligations of the Estate and the Buyer with respect to such assignment and the existence of any default under any such Mine Operating Agreements as of the Closing Date;

g. Adjudicate any and all disputes concerning alleged pre-Closing Encumbrances in and to the Mine Assets, including the extent, validity, enforceability, priority, and nature of any such alleged Encumbrances; and

h. Adjudicate any and all disputes relating to the right, title or interest of the Debtor or the Estate in the Mine Assets and the proceeds thereof.

Noticeably absent from this retention of jurisdiction is jurisdiction to adjudicate claims and rights among C.O.P., ANR and Rhino.  If C.O.P. and ANR were challenging Rhino's status

---

[9] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195 (2009).

13

as the operator under the Mine Operating Agreements, or had refused to give possession of the mine to Rhino, or had interfered with Rhino's peaceful operations, this Court would have jurisdiction over that dispute—but that is not the dispute.

Finally, any argument that, through the Sale Order, this Court intended to retain jurisdiction over disputes among C.O.P., ANR and Rhino fails because of the inability of this Court to create its own jurisdiction. As discussed above, this Court lacks jurisdiction to adjudicate disputes between non-debtor parties that do not affect administration of the bankruptcy estate. A court cannot create jurisdiction where none exists.[10] Even if this Court had intended, by its Sale Order, to retain jurisdiction to adjudicate claims and rights among C.O.P., ANR and Rhino, such an order is without effect.

## IV. CONCLUSION

This Court's findings and conclusions that are the subject of dispute in this adversary proceeding were entered in connection with and for the purposes of making determinations under 11 U.S.C. § 365 in the Debtor's bankruptcy case. The Court made a finding of a present ability to assure future performance under the Mine Operating Agreements but made no prospective findings on actual performance under the Mine Operating Agreements. Other than clarifying this Court's rulings, there is no bankruptcy jurisdiction over the parties' claims in this matter. Counts III, IV, V and VI of Plaintiff's Second Amended Complaint will be dismissed, and all of C.O.P.'s and ANR's counterclaims will be dismissed.

---------------------------------------------END OF DOCUMENT-------------------------------------------

---

[10] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003 (1998).

\_\_\_\_\_ooo0ooo\_\_\_\_\_

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to the following:

George B. Hofmann
Parsons Kinghorn & Harris
111 East Broadway
11th Floor
Salt Lake City, UT 84111 .

William F. Dobbs, Jr.
500 Lee St. E. Suite 1600 (25301)
P.O. Box 553
Charleston, WV 25322-0553

P. Matthew Cox
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145

David E. Kingston
3212 South State Street
Salt Lake City, UT 84115